1
2
3
4
5
6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    MARK T. FRYE,                        )
                                          )
10                Petitioner,             )      No C 04-2098 JSW (PR)
                                          )
11        vs.                             )      ORDER DENYING PETITION
                                          )      FOR A WRIT OF HABEAS
12   LEA ANN CHRONES, Warden,             )      CORPUS
                                          )
13                Respondent.             )
     _____ )
14

15

16        This is a habeas case filed by a state prisoner, Mark Todd Frye, pursuant

17   to 28 U.S.C. § 2254.  Mr. Frye was convicted by a jury in San Benito County of

18   one count of burglary, a violation of California Penal Code § 459.  In a separate

19   proceeding, the state trial court found true the allegation that Mr. Frye had

20   previously suffered a serious felony conviction within the meaning of California

21   Penal Code § 1170.12.  Mr. Frye was sentenced to six years in state prison.

22        As grounds for habeas relief, Mr. Frye argues that (1) there was

23   insufficient evidence to support the conviction, thereby violating his right to due

24   process; (2) the trial court failed to give an instruction to address an erroneous

25   legal theory advanced by the prosecution, also resulting in a violation of due

26   process, (3) trial counsel rendered ineffective assistance by failing to object to the

27   same erroneous legal theory of the prosecution; (4) the trial court gave an

28   instruction on flight even though there was no evidence of such, another violation

of due process; (5) the trial court gave an instruction which effectively eviscerated the defense theory of the case, again violating his right to due process; and (6) the trial court failed to give an instruction on the defense theory of the case, yet another violation of due process.  Having reviewed the parties' briefs and accompanying submissions, the Court hereby **DENIES** Mr. Frye's petition.

## I.   FACTUAL BACKGROUND

On May 14, 2002, Mr. Frye was charged in an amended information with one count of second-degree burglary.  *See* Resp't's Ex. A (CT 157).  The evidence presented at Mr. Frye's trial is discussed in the state appellate court's opinion of February 5, 2004 (as modified), *see* Resp't's Exs. D-D1 (state court opinion and order modifying opinion), and reflected in the Reporter's Transcript ("RT").  *See* Resp't's Ex. C (RT).  To wit, shortly after midnight on January 15, 2002, Stefanie Cannon and Lazaro Cabrera finished their shifts at Premier Cinemas in Hollister.  The two began talking in Mr. Cabrera's car, which was located in the theater parking lot, which in turn is slightly across from a business called Tri-County Rentals.  About an hour later, Ms. Cannon noticed a white SUV going by very slowly on the street.  *See* RT 374-76, 382-83.  The SUV, which Ms. Cannon described as a "Jimmy, Blazer, or something like that," caught her attention because "usually traffic doesn't go that slow on [that street]." RT 376; *see also* RT 401 ("No car at 1:00 o'clock n the morning have I seen go by that slow . . . .").  Ms. Cannon saw the SUV drive down the street, past Tri-County Rentals, to a light, where the car "stayed . . . for a little while," and then the SUV "made a U-turn, and came back up real slow."  RT 377.  Ms. Cannon did not see who was in the car.  *See* RT 385.

After the SUV left, Ms. Cannon saw a Ryder truck drive past, make a

slight U-turn, and then back up in front of Tri-County Rentals. Ms. Cannon did not see anyone get out of the truck but she heard some yelling and chains rattling." RT 378. Ms. Cannon then saw the gate of Tri-County Rentals open and the truck backed up more into the driveway, after which she heard the alarm go off: "[I]t said something like, 'Intruder present. Please leave the premises. The police are being called.'" RT 379. The alarm continued to sound for about three to five minutes and, during that time, Ms. Cannon thought that the SUV "came back around to check." RT 379. More specifically, the SUV came back around and then both the SUV and Ryder truck left in the same direction, with the SUV leading. *See* RT 379-80. A few minutes later, the police arrived at the scene. *See* RT 388.

Mr. Lazaro also saw the SUV and Ryder truck. According to Mr. Lazaro, the SUV, which he described as a "white Jimmy-type car," drove by and then the Ryder truck arrived and backed into the driveway of Tri-County Rentals. RT 409. Mr. Lazaro saw some men come up behind the truck and open the gate of Tri-County Rentals and then the SUV took off. *See* RT 409-10. Mr. Lazaro did not see who was in the SUV. *See* RT 411, 420. The Ryder truck was at Tri-County Rentals for approximately five to ten minutes. During that time, the voice alarm went off. *See* RT 412. The Ryder truck left the scene "[u]nusually fast," RT 419, and the police arrived a few minutes later. RT 413.

At trial, Mr. Lazaro did not testify, as Ms. Cannon had, that, before the Ryder truck left, the SUV came back. However, immediately after the incident, Mr. Lazaro, as well as Ms. Cannon, spoke with a police officer, Eric Olson, who took their statements. According to Officer Olson, Mr. Lazaro stated that the Ryder truck pulled out of Tri-County Rentals and then the "SUV pulled in behind the Ryder truck" and both vehicles left the scene in the same direction. RT 425.

3

Based on the statements of Ms. Cannon and Mr. Lazaro, Officer Olson put a BOL (*i.e.*, "be on the lookout") for a white Blazer, SUV-type vehicle and a yellow Ryder moving truck.  *See* RT 424.

Sgt. Michael Stephens and his partner were on duty at the time and heard an alarm come out over the police radio about the burglary.  On Shore Road, Sgt. Stephens saw a Ryder truck and a white GMC Jimmy.  The truck was following the SUV.  *See* RT 431-32, 457.  Sgt. Stephens then heard the BOL on the radio and accordingly pulled up behind the truck.  According to Sgt. Stephens, it looked as if the truck and SUV were traveling together because, even though it was late at night, they were the only two vehicles on the road and there was not a lot of distance between them.  *See* RT 435.  The truck then pulled in front of the SUV and sped away.  *See* RT 432, 442.  Sgt. Stephens got the license plate number of the SUV, provided the number to dispatch, and proceeded to follow the Ryder truck.  *See* RT 433.  The truck turned right, going northbound on Highway 25 and the SUV turned left, going the opposite direction on the highway.  *See* RT 433.  Sgt. Stephens followed the truck but eventually the chase was turned over to CHP.  *See* RT 436.  Because the CHP had only one unit in the area, Sgt. Stephens was asked to trail.  The pursuit lasted some 45 minutes until the truck was finally apprehended.  *See* RT 436, 439.  Inside the truck the police found eighteen weed trimmers, two lawn mowers, and a set of bolt cutters.  *See* RT 476.

As for the SUV, Officer Steven Vining was monitoring the police radio and learned that the car was headed southbound on Highway 25.  He went to the corner of Highway 25 and Highway 156 to wait for the SUV.  Officer Vining saw the SUV approach and make a right from Highway 25 on to westbound Highway 156.  *See* RT 448-49.  He activated the lights on his police car and went through

the intersection, which was red at the time, and the SUV "almost immediately pulled over." RT 450. The windows of the SUV were tinted so that Officer Vining was able to see only three silhouettes inside the car – one person in the driver's seat, another in the passenger's seat, and a third person in the back seat. Officer Vining asked the person in the passenger's seat to get out of the car, and the person complied. Officer Vining identified the passenger as Mr. Frye. *See* RT 450.

As Mr. Frye exited the vehicle, some items fell to the ground. Those items turned out to be a flashlight and a pair of black knit gloves. *See* RT 451, 465-66. Officer Vining had Mr. Frye kneel on the ground between the SUV and police car. Once Mr. Frye did so, the driver of the SUV put the car into gear and drove away. *See* RT 451. Officer Vining "held [his] position" and detained Mr. Frye and "then put out over the radio that the vehicle had fled." RT 451. Officer Vining subsequently determined that the items that had fallen to the ground were a flashlight and a pair of black knit gloves. *See* RT 451. Officer Vining also found a pocket knife on Mr. Frye's person after doing a cursory search for weapons. *See* RT 452.

According to Officer Vining, it appeared that the SUV he stopped had the same license plate number as the SUV that Sgt. Stephens saw on Shore Road. Officer Vining informed dispatch of the license plate number of the SUV that he had stopped and that subsequently drove off while he was detaining Mr. Frye. *See* RT 468-69.

The police later determined that the Ryder truck was owned by a company with a Fresno telephone numbers. *See* RT 506-08. Both Mr. Frye and the persons who were in the Ryder truck resided in Fresno. *See* RT 513-15. As for the SUV, it was registered in Fowler, a city about ten to twelve miles south of

Fresno.  *See* RT 521.

After the evidence was presented to the jury and jury instructions were given, both the prosecution and counsel for Mr. Frye made closing arguments to the jury.   A closing argument was also made by counsel for the co-defendant in the case, Frank de la Cruz.  With respect to Mr. Frye, the prosecution argued that he was guilty as an aider and abettor of the burglary.  More specifically, the prosecution argued "[l]ookout liability" – "[l]ookouts aren't in that building partaking in the stealing of the items themselves, but their actions, what they've done, has helped aid, has helped facilitate that crime occurring."  RT 787. According to the prosecution, the persons in the SUV acted as lookouts for the persons in the Ryder truck "before, during, and after [the crime]."  RT 796.

In her closing argument, defense counsel made two main arguments. First, there was a lack of proof that the SUV stopped by Officer Vining was the same SUV that the eyewitnesses Ms. Cannon and Mr. Cabrera had seen.  *See* RT 812-13.  Second, there was a lack of proof that Mr. Frye had anything to do with the crime, including being a lookout.  *See* RT 815-16.

On May 23, 2002, a jury convicted Mr. Frye of one count of burglary, a violation of California Penal Code § 459.  *See* CT 285.  In a separate proceeding, the state trial court found true the allegation that Mr. Frye had previously suffered a serious felony conviction within the meaning of California Penal Code § 1170.12.  *See* CT 286.  Mr. Frye was sentenced to six years in state prison.  *See* CT 316.

Mr. Frye subsequently filed both a notice of appeal and a petition for a writ of habeas corpus in state court.  On February 5, 2004, the state appellate court affirmed the judgment and denied the petition.  *See* Resp't's Ex. D.  The appellate court later modified its opinion.  *See* Resp't's Ex. D-1.  Thereafter, Mr.

6

Frye petitioned the California Supreme Court for relief, which was summarily denied. *See* Resp't's Exs. F, H. Mr. Frye then filed a petition for a writ of habeas corpus in federal court.

## II.   DISCUSSION

Mr. Frye's habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"); therefore, the provisions of that act are applicable. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary" to Supreme Court authority if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application of" Supreme Court authority if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A district court "may not issue [a] writ [of habeas corpus] simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

7

1   also be unreasonable." *Id.* at 411.

2       In the instant case, Mr. Frye argues that his petition for a writ of habeas

3   corpus should be granted because his due process rights were violated and he

4   received ineffective assistance of counsel.  According to Mr. Frye, (1) there was

5   insufficient evidence to support the conviction, (2) the trial court failed to give an

6   instruction to address an erroneous legal theory advanced by the prosecution, (3)

7   trial counsel rendered ineffective assistance by failing to object to the same

8   erroneous legal theory of the prosecution, (4) the trial court gave an instruction

9   on flight even though there was no evidence of such, (5) the trial court gave an

10  instruction which effectively eviscerated the defense theory of the case, and (6)

11  the trial court failed to give an instruction on the defense theory of the case.  The

12  Court shall address each of these arguments in turn.

13  A.      Sufficiency of the Evidence

14      Mr. Frye argues first that there was insufficient evidence to support his

15  conviction in state court and therefore his due process rights were violated.  The

16  Due Process Clause "protects the accused against conviction except upon proof

17  beyond a reasonable doubt of every fact necessary to constitute the crime with

18  which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Therefore, a

19  petitioner who alleges that the evidence in support of his state conviction cannot

20  be fairly characterized as sufficient to have led a rational trier of fact to find guilt

21  beyond a reasonable doubt does state a constitutional claim.  *See Jackson v.*

22  *Virginia*, 443 U.S. 307, 321 (1979).  However, a federal court reviewing

23  collaterally a state court conviction does not determine whether it is satisfied that

24  the evidence established guilt beyond a reasonable doubt.  *See Payne v. Borg*,

25  982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether,

26  'after viewing the evidence in the light most favorable to the prosecution, any

27

28                                      8

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  *See Jackson*, 443 U.S. at 324.  The Ninth Circuit has instructed that, in cases in which AEDPA governs, the standards of *Jackson* should be applied "with an additional layer of deference."  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) ("After AEDPA, we apply the standards of *Jackson* with an additional layer of deference.").

In the instant case, the state appellate court's adjudication on the merits was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, in particular, the standards of *Jackson*.[1]  As the state appellate court explained, a reasonable trier of fact could have found that the prosecution sustained its burden of proving Mr. Frye guilty behind a reasonable doubt because:

(1)  A jury reasonably could have inferred that a communications device such as a cell phone or walkie talkie was not needed in order for Mr. Frye to commit an act with the intention of facilitating the burglary.

(2)  A jury reasonably could have inferred that the occupants of the SUV assisted in the commission of the burglary by driving by Tri-County Rentals to scope out whether anyone was near or in the building, by acting as lookouts from a location outside the view of Ms. Cannon and Mr.

---

[1]  The state appellate court relied primarily on state law in rejecting Mr. Frye's argument that there was insufficient evidence of aiding and abetting.  Where a state court does not consider the applicable federal law, the federal court must ask whether the state law, as explained by the state court, is contrary to clearly  established federal law.  *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001).  Here, there is no real difference between the state law, as explained by the state court, and federal law – both ask whether a reasonable trier of fact could have found that the prosecution had sustained its burden of proving guilt beyond a reasonable doubt.

1    Cabrera, and by accompanying the Ryder truck from the burglary to assist

2    in delaying any pursuit by the police.

3    (3)    A jury reasonably could have inferred that the occupants of the SUV aided

4    and abetted the burglary given the movements of the SUV both before and

5    after the burglary, the unlikelihood that the burglars and their aiders and

6    abettors would risk having an innocent passenger who could derail their

7    endeavor or become a potential witness against them, and the coincidence

8    that Mr. Frye who lived in Fresno, and the lack of credible evidence that

9    Mr. Frye was in Hollister at one in the morning for a reason other than to

10    participate in the burglary being committed by other individuals with

11    Fresno addresses.

12    *See* Resp't's Ex. D at 5-7.

13            Mr. Frye argues still that there was no evidence that he did any act to aid

14    and abet the burglary except to ride in the SUV – *i.e.*, there was no evidence that

15    he was anything more than a passenger.  According to Mr. Frye, the fact that a

16    person is a passenger is not enough to establish aiding and abetting liability under

17    *Mitchell v. Prunty*, 107 F.3d 1337 (9th Cir. 1997)), *overruled on other grounds*

18    *by Santamaria v. Horsley*, 133 F.3d 1242, 1248 (9th Cir. 1998).[2]  The state

19    appellate court rejected this argument on the basis that *Mitchell* is factually

20    distinguishable.

21            In *Mitchell*, the [habeas] petitioner, a passenger in a car that had run
       over the victim, was convicted of murder on the theory that he had
22       aided and abetted it.  The Ninth Circuit concluded there was
       insufficient evidence to support the conviction since there was no

23

24    ─────────────────

25            [2]  While a state court decision may no longer be overturned on habeas review
       simply because of a conflict with circuit-based law, circuit decisions may still be
26    relevant as persuasive authority to determine whether a particular state court holding is
       an unreasonable application of Supreme Court precedent.  *See Duhaime v. DuCharme*,
27    200 F.3d 597, 600 (9th Cir. 1999).

28                                              10

evidence of the petitioner's conduct inside the car and no basis to conclude he did anything to facilitate the murder.  The *Mitchell* court concluded that the driver suddenly could have unilaterally decided to run over the victim with no facilitation from his passenger and that it was irrelevant whether the passenger subjectively approved of the driver's conduct.  The court rejected the claim that the petitioner aided and abetted the crime simply by "fanning the fires of gang warfare that culminated in [the victim's] death."

Unlike the situation in *Mitchell*, the evidence in the present case supported the prosecution's theory that the burglary had been planned before the SUV and the truck came from the Fresno area to Hollister, that the occupants of the SUV acted as lookouts before and during the burglary, and that the only reasonable explanation for defendant's presence in the SUV was that he intended to assist those who were involved in the burglary and that he had done so.

Resp't's Ex. D at 8-9.

The Court agrees with the state appellate court that *Mitchell* is factually distinguishable because, in the instant case, there was evidence that the crime was planned in advance.  Moreover, in *Mitchell*, the issue was whether the passenger in the car aided and abetted the principal was who driving the car.  In the instant case, the issue is not whether Mr. Frye aided and abetted the SUV driver but rather whether the SUV occupants aided and abetted the principals in the Ryder truck.  As the state appellate court concluded, there was evidence from which a reasonable jury could infer that the SUV occupants did aid and abet the burglars in the Ryder truck, including but not limited to the movement of the SUV before and during the burglary which suggested that the SUV acted as a lookout. Although Mr. Frye did not exercise direct control over where the SUV was going because he was not the driver, a reasonable jury could still infer that he was not just a passenger and did act as a lookout, along with the other SUV occupants, as it was unlikely that the others would have had Mr. Frye accompany them all the way from the Fresno area to Hollister in the early morning hours unless he intended to assist the burglary.

B.    Trial Court's Failure to Instruct on a Legal Theory Advanced by the Prosecution

Under California law, a burglary ceases "when the burglar depart[s] from the structure." *People v. Montoya*, 7 Cal. 4th 1027, 1045 (1994). According to Mr. Frye, the prosecutor presented the legally erroneous theory that he aided and abetted the burglary by assisting in the escape of the SUV *after* the burglary was completed.[3] Mr.

---

[3]  The prosecutor argued to the jury as follows :

What you have is lookout activity. That SUV is being a lookout before, during, *and after.* Before the crime, before the commission of the crime, it goes by, it scopes out the area. It goes nice and slow, scopes out the area. Goes up to the signal, turns around again, typical lookout activity. During the crime, comes back again and makes that U-turn again. And at one point, Mr. Cabrera says he believes it stopped -- Miss Cannon says it looks like it's going to stop, but it didn't stop.

*What about after?* After they're traveling down the road together, you have this -- not bait-and-switch, but kind of a -- what's the word I'm looking for? You have a decoy where the SUV's in the lead, the Ryder truck's behind it. Sheriff's Deputy turns around, the Ryder truck gets in front of you and takes off, and the SUV stays going the same speed. Lookout activity, surveillance, counter-surveillance. You're trying to take the pressure off that vehicle with all the goodies, letting them get away while you hold back the police department from going after them.

RT 795-96 (emphasis added).

Subsequently, the prosecutor argued:

Mr. Cabrera on January 15th told Officer Olson that the Blazer was traveling northbound from McCray on Hillcrest and pulled in behind the Ryder truck; that's what he told Olson. He didn't remember that when he testified, but when it was fresh in his mind, that's what he told Olson. Obviously, this positioning was to change later because when the Sheriff's Department sees the vehicles, now the SUV is in front of the Ryder truck so they're traveling together changing position. Then again, when the Sheriff's Department comes on scene, the Ryder truck pulls in, the SUV again changing positions. *Does that sound like the part of the*

12

Frye asserts that the trial court's failure to issue an instruction to correct this legally erroneous theory advanced by the prosecutor violated his right to due process.

The state appellate court rejected this argument for several reasons. First, the court rejected the predicate that the prosecutor had advanced a legally erroneous theory, stating that "the challenged argument was a proper attempt to convince the jury that it could infer [Mr. Frye's] conduct and intent before and during the burglary from the totality of the circumstances surrounding it." Resp't's Ex. D at 13-14; *see also id.* at 4-5 (quoting *In re Lynette G.*, 54 Cal. App. 3d 1087, 1094 (1976) ("Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.")). The court then stated that "the portion of the trial court's instructions on aider and abettor liability that emphasized that an aider and abettor must form the intent to aid and abet the crime before the perpetrators left the store adequately 'disabused the jury' of any conceivable misstatement by the prosecutor in this case and that the prosecutor's overall argument similarly disabused the jury of any notion that [Mr. Frye] could be convicted if his only act in furtherance of the burglary took place after the burglars left the store." Resp't's Ex. D-1 at 1. Accordingly, the court found that there was no due process violation.

This Court concludes that the state appellate court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law. To obtain federal collateral relief for errors in the jury charge, a

---

> *lookout, the decoy, trying to divert law enforcement away from that Ryder truck?*

RT 823 (emphasis added).

petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1961); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Even if, as a matter of due process, a trial court has a duty to correct an argument of counsel that misstates the law, *cf. Boyde v. California*, 494 U.S. 370, 384-85 (1989) (noting that "[a]rguments of counsel which misstate the law are subject to objection and to correction by the court"), the state appellate court determined that, in the instant case, the prosecutor did not make an erroneous legal argument as a matter of state law.  Under state law, a factor that may be considered by a trier of fact in making the determination of aiding and abetting is conduct before and after the offense.  *See In re Lynette G.*, 54 Cal. App. 3d at 1094.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67; *see also Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (concluding that a "state-law determination -- that arsenic trioxide is a poison as a matter of law and is not an element of the offense to be decided by the jury -- is not open to challenge on habeas review").

C.    Ineffective Assistance of Trial Counsel

In a related argument, Mr. Frye contends that his trial counsel provided ineffective assistance because she failed to object to the prosecutor's legally erroneous theory, as described above.  Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner asserting a claim of ineffective assistance of counsel

14

must establish two things.  First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

The state appellate court concluded that Mr. Frye could not establish prejudice because he could not "show that his jury reasonably would have interpreted the prosecutor's comments to mean that the first act defendant engaged in to further the burglary occurred after the burglars had left the store" or that "his jury reasonably would have interpreted the evidence as proving that [he] formed the requisite intent before the burglary was completed but did not take action in furtherance of that intent until after the perpetrators left the premises."  Resp't's Ex. D at 15.  The state appellate court's decision was neither contrary to, nor did it involve an unreasonable application of *Strickland*'s prejudice prong.  Mr. Frye has not shown that there is a reasonable probability that, but for counsel's allegedly deficient performance, the result of the proceeding would have been different.

Furthermore, aside from the prejudice prong, Mr. Frye cannot establish deficient performance because the state appellate court determined that, as a matter of state law, the prosecutor did not present a legally incorrect theory and therefore his counsel could not have been deficient in failing to object to the theory.

D.    Trial Court's Instruction on Flight

15

Mr. Frye argues next that his due process rights were violated when the trial court gave an instruction on flight, because the record did not support a flight instruction with respect to his conduct -- *e.g.*, none of the eyewitnesses testified that the SUV fled the scene of the burglary with any degree of haste and, according to Officer Vining, when he activated his lights to stop the SUV, it "almost immediately pulled over."  RT 450.  The flight instruction given by the trial court was as follows:

> The flight of a person immediately after the commission of a crime or after he is accused of a crime is not sufficient in itself to establish his guilty, but is a fact which, if proved may be considered by you in light of all the other proof, facts, and in deciding whether a defendant is guilty or not guilty.  The weight to which this circumstance is entitled is a matter for your to decide.

RT 771-72.

"Instructional error will not support a petition for federal habeas relief unless it is shown not merely that the instruction is undesirable, erroneous, or even universally condemned, but that by itself the instruction so infected the entire trial that the resulting conviction violates due process."  *Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002) (internal quotation marks omitted).  In the instant case, the challenged instruction did not render Mr. Frye's trial fundamentally unfair because, as the state appellate court noted, the instruction explained that evidence of flight was a fact that needed to be *proved* (and that, even if proved, could not by itself establish guilt).  *Cf. id.* (noting that challenged instructions "did not direct the jury to ignore [petitioner's] explanation for his flight" and therefore did not render petitioner's trial fundamentally unfair).  The instruction did not preclude Mr. Frye from arguing that he did not flee from the scene of the crime.  *Cf. Griffin v. United States*, 502 U.S. 46, 59 (1991) (noting that, when two theories are presented to a jury and one is factually insufficient, a conviction may be upheld because a jury is equipped to analyze the evidence and

16

1    so a court may assume that its verdict on the ground that the facts supported).

2    E.    Trial Court's Instruction on Defense Theory of the Case

3          Mr. Frye contends that his due process rights were further violated when

4    the trial court gave an instruction that served to eviscerate the defense theory of

5    the case.  The challenged instruction was as follows:

6          [I]f the evidence establishes beyond a reasonable doubt that the
           defendant aided and abetted the commission of or was a
7          *conspirator* in the commission of the crime charged in this case, *the
           fact, if it is a fact, that he was not present at the time and place of
8          the commission of the alleged crime for which he is being tried
           does not matter* and does not in itself entitle the defendant to an
9          acquittal.

10   RT 775 (emphasis added).  According to Mr. Frye, this instruction violated his

11   right to due process for two reasons: (1) the instruction stated that he could be

12   found liable as a conspirator but the jury was given no guidance as the meaning

13   of a criminal conspiracy; and (2) the instruction effectively allowed the jury to

14   ignore his defense that he did not aid and abet the burglary because he was not

15   present when the burglary was in progress.

16         The state appellate court rejected Mr. Frye's argument because "no

17   rational jury would have been misled by the trial court's brief reference to the

18   concept of conspiracy" and, "[i]n any event, any error in including the concept of

19   conspiracy . . . was harmless beyond a reasonable doubt" because "none of the

20   parties tried this case on a theory of conspiracy" -- "the prosecutor tried the case

21   on an aiding and abetting theory."  Resp't's Ex. D at 11 (citing *Chapman v.

22   California*, 386 U.S. 18, 24 (1967)).  The court also stated that the instruction did

23   not

24         allow[] the jury to ignore the evidentiary basis for the defense that
           he was not acting as a lookout . . . . The focus of the instruction in
25         question is its emphasis that 'the fact, if it is a fact, that [Mr. Frye]
           was not present at the time and place of the commission of the
26         alleged crime for which he is being tried does not matter and does
           not in itself entitle [him] to an acquittal.  The law is clear that [Mr.

27

28                                              17

Frye] need not have been present at the time and place of the commission of the burglary to be convicted as an aider and abetter. [Mr. Frye] was not at the scene of the burglary, and [the jury instructions] appropriately apprised the jury of the legal significance, or lack thereof, of [his] absence, if they concluded he was an aider and abettor.

*Id.*

Ninth Circuit case law indicates that "[w]hether a term in a jury instruction requires definition normally turns on whether it expresses a concept within the jury's ordinary experience." *United States v. Tirouda*, 394 F.3d 683, 689 (9th Cir. 2005) (concluding that no error resulted from failure to define "accomplice" in an accomplice instruction). Assuming *arguendo* that the concept of conspiracy is outside the comprehension of the average juror and that the challenged instruction was therefore confusing (*i.e.*, by not defining "conspirator"), the state appellate court's harmless error analysis was neither contrary to nor an unreasonable application of clearly established federal law. *See id.* (noting that, even if instruction was misleading for failure to by not defining the term "accomplice," "any error would still not be plain because it did not prejudice the [defendants]"); *Medina v. Hornung*, 386 F.3d 872, 878-79 (9th Cir. 2004) (affirming denial of habeas relief because state court's " harmless error analysis [with respect to remarks made by a judge to a jury]  was neither contrary to, nor an unreasonable application of, clearly established federal law"). Because, in other jury instructions, the trial court addressed only liability as a principal and liability as an aider and abettor, *see* RT 773-74, and because no party, including the prosecutor, argued a conspiracy theory, the challenged instruction's reference to conspiracy was not prejudicial. *See Estelle*, 502 U.S. at 72 (noting that an instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record)

As for Mr. Frye's contention that the defense theory was eviscerated as a

18

result of the challenged instruction, again, the state appellate court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  As explained by the state appellate court, the instruction at issue did not cause the jury to ignore Mr. Frye's defense that he was not present at the scene of the crime.  Rather, the jury was simply informed that, as a matter of state law, a "defendant need not have been present at the time and place of the commission of the burglary to be convicted as an aider and abetter."  Resp't's Ex. D at 11; *see also* RT 774 (instructing the jury that "[a] person who aids and abets the commission or attempted commission of a crime may not be present at a scene").  The instruction at issue therefore did not amount to a complete failure to instruct on a defense.  The instruction did not prohibit the jury from considering the fact that Mr. Frye was not present.

G.      Trial Court's Refusal to Give CALJIC No. 2.91

Finally, Mr. Frye claims a due process violation because of the trial court's refusal to give CALJIC No. 2.91, which provides as follows:

> The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which [he] [she] is charged.
>
> If, after considering the circumstances of the identification [and any other evidence in this case], you have a reasonable doubt whether defendant was the person who committed the crime, you must give the defendant the benefit of the doubt and find [him] [her] not guilty.

CALJIC No. 2.91.  Mr. Frye argues that the failure to give the instruction amounted to a failure to instruct on the defense theory of the case since it was Mr. Frye's position at trial that the SUV stopped by Officer Vining was not the same car that the eyewitnesses had seen outside Tri-County Rentals.

The state appellate court concluded that it was not necessary to give CALJIC No. 2.91 as part of the jury instructions because the use note and

comment to the instruction indicate that it "only should be given when there is eyewitness testimony identifying the defendant as the perpetrator of the charged crime" and "[h]ere, there was no such identification made by either eyewitness." Resp't's Ex. D at 15.  The court added that the trial court was not obligated to instruct the jury with CALJIC No. 2.91 as it had given instructions on reasonable doubt and the requirement that an accomplice must intend to facilitate and CALJIC No. 2.91 could have been confusing or redundant.  *See id.* at 16.

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment.  *See id.*  Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury.  *See Duckett*, 67 F.3d at 745.  Moreover, while it is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case, *see Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (concluding that it was error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence), the defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory.  *See United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996).

Given the above, the state court appellate's decision was neither contrary to nor an unreasonable application of clearly established federal law.  Although the trial court did not give the precise instruction embodied in CALJIC No. 2.91, it did instruct the jury that, "[i]f, after considering the circumstances of any identification and any other evidence in this case, you have a reasonable doubt

whether a defendant was a person who committed the crime, you must give the defendant the benefit of the doubt and find him not guilty." RT 773. This instruction adequately embodied the defense theory that the SUV stopped by Officer Vining was not the same SUV seen by the eyewitnesses.

### III.   **CONCLUSION**

For the foregoing reasons, the Court concludes that habeas relief is not warranted and denies Mr. Frye's petition for a writ of habeas corpus.

IT IS SO ORDERED.

Dated: May 23, 2007

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

FRYE,

          Plaintiff,

  v.

CHRONES et al,

          Defendant.

_____/

Case Number: CV04-02098 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 23, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Allan Irwin Yannow
State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Mark T. Frye
3363 Sierra Madre, Apt. A
Fresno, CA 93726

Dated: May 23, 2007

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk